# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DEBRA MILLER,                      :
                                   :
                    Plaintiff,     :        No. 3:19-cv-01726
                                   :
            v.                     :        (SAPORITO, M.J.)
                                   :
ANDREW SAUL,                       :
Commissioner of                    :
Social Security,                   :
                                   :
                    Defendant.     :

## **MEMORANDUM**

This is an action brought under 42 U.S.C. §405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Debra Miller's claim for disability insurance benefits under Title II of the Social Security Act. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. (Doc. 10).

For the reasons stated herein, we will AFFIRM the decision of the Commissioner.

## I.    *Procedural Background*

On February 19, 2015, Miller protectively filed an application for disability benefits under Title II of the Social Security Act alleging disability as of June 13, 2013. In her application, Miller alleged that the following impairments prevent her from engaging in any work: morbid obesity, fibromyalgia, rheumatoid arthritis, depression, anxiety, lupus, vitamin D deficiency, osteoporosis, Sjogren's syndrome bursitis, hyperlipidemia, hypothyroidism, GERD/reflux, esophagitis, pharyngitis, sinusitis, small patella tractor spur, and hypertension. (Case No. 1:18-cv-00096, Doc. 1, at 2).

Miller's claim was initially denied on July 7, 2015. Thereafter, on August 21, 2015, Miller filed a timely request for an administrative hearing. Her request was granted. Miller appeared and testified in Harrisburg, Pennsylvania, before Administrative Law Judge ("ALJ") Susan Torres on March 16, 2017. Miller was represented by counsel, Ronald Tomasko, throughout the proceeding. An impartial vocational expert ("VE"), Sheryl Bustin, appeared and testified at the administrative hearing. Christopher Miller, the claimant's husband, also

appeared and testified. (Tr. 31).

On May 30, 2017, the ALJ denied Miller's application for benefits in a written decision. Miller sought further review of her claim by the Appeals Council, but her request was denied on November 17, 2017. This made the ALJ's May 30, 2017, decision the final decision subject to judicial review by this Court.

Miller filed a timely complaint in this Court on January 12, 2018. (Case No. 1:18-cv-00096, Doc. 1). In response, defendant filed an uncontested motion to remand because the ALJ inadvertently considered medical records relating to another individual in evaluating Miller's RFC and her subjective statements.  (Case No. 1:18-cv-18-00096, Doc. 9 at 2). On April 23, 2018, the Honorable Yvette Kane of this court granted the motion to remand and directed the clerk to close the case.  (Case No. 1:18-cv-00096, Doc. 10).

On June 29, 2018, the Appeals Council ordered that this matter be remanded to an ALJ to give "further consideration" to Miller's "maximum residual functional capacity" and "further evaluate" Miller's symptoms. (Tr. 112-13).  A remand hearing was held on December 13, 2018, before the same ALJ.  On March 27, 2019, the ALJ again denied

Miller's application for benefits in a written decision.  (Tr. 8-23).  Miller sought further review of her claim by the Appeals Council, but her request was denied on August 5, 2019. This makes the ALJ's March 27, 2019, decision the final decision subject to judicial review by this Court.

On October 3, 2019, Miller filed a timely complaint in this court. (Doc. 1).  In her complaint, Miller alleges that the final decision of the Commissioner is erroneous and is not supported by substantial evidence and is not in accordance with the law. On December 11, 2019, the Commissioner filed his answer, in which he maintains that the ALJ's decision was made in accordance with the law and is supported by substantial evidence. (Doc. 6).

## II.   *Factual Background*

Miller is an adult individual born November 18, 1973. She was thirty-nine  years old at the time of the alleged onset of disability—June 13, 2013. (Tr. 58). Miller's age at the onset date makes her a "younger person" under the Commissioner's regulations whose age generally does not affect her ability to adjust to other work. *See* 20 C.F.R. §404.1563.

At the time of the administrative hearing, Miller was forty-five years old and resided with her husband in Elizabethville, Pennsylvania,

which is in the Middle District of Pennsylvania. (Tr. 175, 275). Miller's past work included work as a medical secretary. (Tr. 65).

Miller completed a high school education and attended a technical school. (Tr. 179). Miller stated that she is able to drive, but not long distances. (Tr. 309). In a Function Report dated May 5, 2015, Miller stated that she wakes up, gets out of bed, uses the bathroom, and then usually goes back to bed. Some days she watches television, goes on the computer to check emails, does her banking, shops online, goes on social media, rests, reads, and talks on the phone. Some days she drives to the post office, or to get something to eat, and goes to her doctor appointment. If she is having a good day, she will make dinner. (Tr. 307-13). Miller stated that she enjoys reading, watching television, spending time with her nieces and nephew, going to movies, going out to eat, going on vacation, going shopping, bowling, miniature golf and swimming, although she does not do them well anymore because of pain and exhaustion. (Tr. 310). Miller stated that she does not spend a lot of time with others but does spend time talking on the phone and using the computer. (Tr. 310).

Miller stated that her extreme fatigue, exhaustion, constant pain

when standing, sitting, bending, laying, concentration problems, memory issues, depression, anxiety, and constant headaches prevent her from working.  (Tr. 306).  Her conditions affect her sleep because of the pain and trying to get in a comfortable position.  She stated that she has difficulty dressing, bathing, taking care of her personal care, and using the toilet. (Tr. 307). She stated she is able to prepare quick meals. (Tr. 308).  She stated she can no longer perform outdoor chores, she does not do any cleaning, but she does dishes and laundry sometimes.  Her husband does most of the housework, especially if it involves standing, bending, or kneeling.  (Tr. 308).   She stated she does go out to shop in stores,  and she shops by phone and on computer.  She shops for personal essential needs, groceries, and gifts.  She goes to the grocery store with her husband every two weeks.  (Tr. 309).

Miller stopped working in September 15, 2011, when the company she worked for let her go due to downsizing.  (Tr. 276).

At the administrative hearing held on December 13, 2018, Miller testified that she suffers from chronic pain. She stated that she has pain throughout her entire body but that the major pains are in her back, neck, knees, and feet.  (Tr. 37).  She stated that currently she uses a

wheelchair to get around. She stated that she has difficulty sleeping at night and sleeps during the day. (Tr. 38). Miller stated that she has difficulty concentrating and feels like her brain is "fizzy." She stated that the medications that she has been prescribed cause infections, and then she needs to stop taking them and try a different one. (Tr. 39). She stated that she needs her husband to help her with activities of daily living and that he does the cooking and cleaning. (Tr. 40). She stated that she is unable to bend, stoop, kneel, handle/finger things. (Tr. 41). She stated that some days are better than others. (Tr. 42).

Testimony shows that in August of 2013 Miller was taking care of a one-year-old baby. (Tr. 43). Miller stated that she has lost and gained weight on and off. She stated at some point she may try weight loss surgery. (Tr. 44-45).

Additionally, Christopher Miller, the claimant's husband testified at the hearing. He stated that his wife continues to suffer with chronic pain in her neck, back, knees, legs, and hands. She has trouble walking, and it has gotten worse over time. (Tr. 47). He stated that she has trouble sleeping due to pain that keeps her awake. He stated that she has trouble keeping on task and understanding directions sometimes.

She suffers with infections which are side effects from medications.  He stated that everyday he helps her get dressed, gets her things to eat, cleans the house, helps her to bed, helps her with her shower.  (Tr. 48-49).

## III.   Standard of Review

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence

may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[1] that makes it impossible to do his or her previous work or any other substantial gainful activity[2] that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe

---

[1] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[2] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[3] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[4] and (5) whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. *Id.* The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); *Mason,* 994 F.2d at 1064.

---

[3] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[4] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(2).

## IV.   *The ALJ's Decision*

In her most recent decision of March 27, 2019, denying Miller's claim, the ALJ evaluated Miller's application for benefits at each step of the sequential process. At step one, the ALJ found that Miller did not engage in substantial gainful activity between her alleged onset date of June 13, 2013, and December 31, 2016, her date last insured. (Tr. 13). At step two, the ALJ found the following impairments were medically determinable and severe during the relevant period: chronic fatigue syndrome, morbid obesity, fibromyalgia, rheumatoid arthritis, unspecified depressive disorder, unspecified anxiety disorder, gastroesophageal reflux disease and hypertension. (Tr. 13). At step three, the ALJ found that Miller did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, during the relevant period. (Tr. 14).

Between steps three and four, the ALJ assessed Miller's RFC. After evaluating the relevant evidence of record, the ALJ found that Miller had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except she:

> could occasionally climb ramps and stairs and never climb ladders, ropes or scaffolds. The claimant could never crawl and could occasionally balance, stoop, kneel and crouch. She must have avoided concentrated exposure to extreme cold and heat, wetness, humidity, vibration and hazards, such as heights and moving machinery. Further, she could understand, remember and carry out simple instructions.

(Tr. 16).

The ALJ's conclusions at steps four and five of the sequential evaluation process were based on this RFC assessment and testimony by the vocational expert. At step four, the ALJ found that Miller was not capable of performing her past relevant work as a medical secretary. (Tr. 21).

At step five, the ALJ further found that, in the alternative to her past relevant work, Miller could perform other jobs that exist in significant numbers in the national economy. Specifically, the ALJ relied on testimony by the vocational expert about whether there were jobs for a hypothetical individual with Miller's age, education, work experience, and RFC. The vocational expert testified that Miller could perform the occupations of final assembler, optical goods, DOT #713.687-018, an unskilled sedentary job with 40,000 positions nationally; carding machine operator, DOT #681.685-030, an unskilled sedentary job with

20,000 positions nationally; or call out operator, DOT # 237.367-014, an unskilled sedentary job with 20,000 positions nationally. (Tr. 22)

## V.     Discussion

Miller contends the decision of the Commissioner contains multiple errors. Miller specifically argues three issues: (1) that the ALJ failed to properly evaluate the medical evidence of record; (2) that the ALJ improperly discounted/discredited the symptoms Miller experiences as a result of her fibromyalgia and rheumatoid arthritis diagnosis; and (3) that the ALJ failed to adhere to the dictates of the Appeals Council remand directive of June 29, 2018.   In response, she requests that this court reverse and vacate the ALJ's denial and order the Commissioner to pay this disability claim or in the alternative, remand the matter with specific instructions for the court. (Doc. 11, at 16).

### A. The ALJ's evaluation of medical opinion evidence

First, Miller asserts that the ALJ failed to properly evaluate the medical evidence of record.  Miller contends that the ALJ erred in this finding because she failed to properly credit the medical opinions by her treating rheumatologist, Natalie Dubchak, M.D., who opined in a medical source statement dated March 7, 2017, that, due to her pain and fatigue,

Miller would miss three days or more of work per month, she would require "15 minute reclining breaks" every two hours, she would require 5-minute restroom breaks every 45 minutes to 2 hours, and she could rarely do "handling" and could only occasionally do "reaching" and "fingering." (Tr. 618-19). Dr. Dubchak opined in a medical source statement dated October 24, 2018, that Miller had the capacity to sit for only two hours during the course of an eight hour workday, she needed a cane to ambulate, and she can only occasionally engage in bilateral reaching, handling and fingering, she could not be exposed to mechanical parts, and she would require a quiet work setting. (Tr. 838-47). Additionally, Dr. Dubchak dictated a note on November 21, 2018, opining that Miller was not physically capable of performing sedentary, unskilled type vocations. (Tr. 383). In addition, Miller argues that the ALJ erred by not giving proper weight to the opinion of her primary care physician, Edward Lentz, D.O., who prepared a summary report dated December 10, 2018, indicating that Miller had been "under his care for many years and I am quite familiar with her condition." (Tr. 960). Dr. Lentz opined that Miller is in "obvious pain" from her severe impairments including fibromyalgia and morbid obesity. He further opined that Miller would be

unable to work due to her pain, weight, and prescription medication usage.  (Tr. 960).

### ***Dr. Dubchak's opinion***

Here, the ALJ pointed to the October 2018 opinion of Miller's rheumatologist, wherein she opined that Miller could:

> occasionally lift up to 20 pounds and occasionally carry up to 10 pounds, sit for 2 hours total in an 8-hour day and stand and walk for only 5 minutes each in an 8-hour day, with occasional reaching, handling, and fingering, no pushing/pulling and continuous feeling, occasional operation of bilateral foot controls, no postural activity and no exposure to any environmentals.

(Tr. 618-19, 838-43).

Ultimately, the ALJ gave this opinion partial but limited weight as it did not pertain to the relevant period at issue, noting that Dr. Dubchak opined that these limitations were present since 2017—after Miller's date last insured.  (Tr. 843).  The ALJ also noted that in March 2017, Dr. Dubchak opined that Miller would miss more than 3 days per month, require excessive restroom breaks (15 minute breaks every 45 minutes to 2 hours) and reclining breaks (15 minute breaks every 2 hours), and that she would be capable of only 1 hour of standing/walking, 4-5 hours of

sitting, occasional lifting and carrying of up to 10 pounds, occasional push/pull, occasional climbing of stairs (and no other climbing), rarely balancing and bending/stooping, no kneeling or crouching, frequent feeling, occasional fingering and reaching, and rare handling. (Tr. 618-19).

The ALJ explained that he afforded limited weight due to the evidence showing improvement in pain and GI symptoms with medication, largely normal findings on examination related to range of motion, strength and sensation, and her conditions were not associated with severe medical complications to support excessive breaks. (Tr. 416, 571, 851). The evidence supports Miller's reports of pain with walking, as such, significant walking limitations are consistent with the evidence. (Tr. 406, 414, 418, 542). Thus, the ALJ properly afforded this opinion partial weight. (Tr. 20).

### ***Dr. Lentz***

The ALJ also pointed to the opinion of Dr. Lentz, a treating provider, who opined in December 2018 that Miller was:

> Unable to lift more than 10 pounds, walk at all without pain in the left knee and back, perform fine motor movements without difficulty or sit for more than 30 minutes in one position.

(Tr. 960).

He suggested that Miller was "totally disabled" and "unable to perform any work for a wage." (Tr. 960). This opinion also is dated after the date of last insured in this case, and the ALJ felt it was not a true reflection of her abilities during the pertinent period. Additionally, the ALJ found that the opinion was not consistent with the rheumatology records that noted no evidence of degenerative arthritis or pathology via studies of the lumbar spine or knee. (Tr. 418, 551). The ALJ found that there was no evidence from the relevant period the Miller could only sit for 30 minutes or that she had problems with fine motor movement, as she generally presented with intact range of motion, sensation and strength on examination, and she indicated that she could prepare meals and do laundry. (Tr. 416, 533, 539, 543, 545, 547, 549). The record did document pain with walking, which is consistent with Dr. Lentz's opinion and therefore the ALJ afforded partial weight to this opinion. (Tr. 406, 414, 418).

To be a "medical opinion" entitled to "controlling weight," an opinion must come from a "treating source," it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques,"

and it must be "not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(a)(2), (c)(2); Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2. Under the Social Security regulations in effect at the time of the ALJ's decision in this case, a "treating source" is defined as a licensed physician, psychologist, or other acceptable medical source "who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1527(a)(2); *see also id.* § 404.1502(a) (defining "acceptable medical source"). As to what constitutes an "ongoing treatment relationship," the regulation states:

> Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).

*Id.* § 404.1527(a)(2).

If not well-supported by medically acceptable clinical and diagnostic techniques or inconsistent with other substantial evidence in

the case record, a treating source medical opinion is nevertheless entitled to deference. Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *4. Ordinarily, it will be afforded "great weight*." See id.* at *2; *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). *See generally* 20 C.F.R. § 404.1527(c) (detailing factors considered in evaluating weight given to a medical opinion).

Here, Dr. Dubchak's opinion that Miller is "unable to work due to her pain, weight, and prescription medication usage" and Dr. Lentz's opinion that Miller is "totally disabled" and "unable to perform any work for a wage" are not medical opinions, but rather opinions on whether Miller is *disabled*, an issue expressly reserved to the Commissioner. *See id.* § 404.1527(d)(1); *Dixon v. Comm'r of Soc. Sec.*, 183 Fed. App'x 248, 251 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance."); *Snow v. Astrue*, Civil Action No. 12-5 Erie, 2013 WL 501377, at *8 (W.D. Pa. Jan. 15, 2013) ("The ultimate determination as to whether a claimant is disabled is reserved to the Commissioner."). "Medical sources . . . sometimes offer opinions . . . about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the

Commissioner. . . . [T]hey can never be entitled to controlling weight or given special significance." Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *5; *see also Dixon*, 183 Fed. App'x at 252 (finding that treating source opinions stating that a claimant was unable to do specific jobs "reflected the treating professionals' opinions on disability, [and] they were properly afforded no special significance"); *Snow*, 2013 WL 501377, at *8 ("Since medical doctors typically lack the vocational expertise needed to ascertain whether an individual's limitations would preclude the performance of specific jobs, their opinions as to whether a claimant is 'disabled' carry little weight. . . . Questions pertaining to employer expectations are more appropriately addressed by a vocational expert.").

Additionally, Miller claims that the ALJ failed in his duty to develop the record by failing to seek a consultative evaluation and/or have a medical consultant testify at the remand hearing. (Doc. 11, at 7-8).

While social security hearings are non-adversarial and ALJs seek to help claimants in developing the record, the burden of proving that one is disabled in steps one through four of the sequential evaluation processes is on the claimant, not the ALJ. *See Durden v. Colvin*, 191 F.

Supp. 3d 429, 449–50 (M.D. Pa. 2016) (stating that the claimant has the burden "to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition").

Although the ALJ has the duty to assist a claimant in developing a full and fair record, *Ventura,* 55 F.3d at 902, an ALJ is not required to "search out relevant evidence which might be available, since that would in effect shift the burden of proof to the government." *See Gober*, 574 F.2d at 777; *Wolfe*, 203 F. Supp. 3d at 481–82; *Orndorff*, 215 F. Supp. 3d at 404. Moreover, "[w]hile an ALJ is required to assist the claimant in developing a full record, he or she has no such obligation to 'make a case' for every claimant." *Durden v. Colvin*, 191 F. Supp. 3d 429, 449 (M.D. Pa. 2016).

> The burden [still] lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition. The ALJ's only duty in this respect is to ensure that the claimant's complete medical history is developed on the record before finding that the claimant is not disabled. . . . Only if the evidence before the Commissioner is insufficient does the ALJ have the duty to attempt to obtain additional evidence to determine whether a claimant is disabled.

The ALJ's duty is to ensure that the evidence is sufficient to make a benefit determination and to resolve any material conflicts or ambiguities in the evidence. Moreover, because Miller was represented by counsel at the administrative level, the ALJ is entitled to assume that the claimant is making the strongest case possible for benefits. *Glenn v. Sec'y of Health & Hum. Servs.*, 814 F.2d 387, 391 (7th Cir. 1987).

In this case, the ALJ complied with her duty to ensure that the record was fully developed. Miller's medical records were complete, and there is nothing ambiguous or unclear about the assessment or treatment records of Drs. Dubchak and Lentz. Thus, we find the evidence of record sufficient for the ALJ to make her disability determination. *See Conrad v. Colvin*, Civil Action No. 13-204, 2014 WL 2980889, at *5 (W.D. Pa. July 1, 2014); *see also Walter v. Berryhill*, Civil Action No. 17-1124, 2018 WL 3474645, at *7–*8 (W.D. Pa. July 19, 2018).

The ALJ in this case demonstrated her consideration of Miller's limitations within the decision. (Tr. 13-22). More specifically, the ALJ discussed how Miller's treatment notes do not support her allegations. She discussed the records which show that Miller was able to care for a one-year old baby, perform matters of personal care and prepare meals.

She discussed how Miller's mental symptoms were managed with very little treatment and her hypertension and GI issues were controlled with medication.   She discussed that the records reflected Miller's lower extremity pain with walking, but there was no evidence that Miller was as limited in her ability to walk as she alleged. The ALJ discussed how the record supported allegations of lower extremity pain with walking and of Miller's difficulty exercising in late 2013. The ALJ found that this evidence suggested that Miller could perform sedentary exertional activity despite her problems with walking.   (Tr. 18).   She pointed to the records which showed improvement with pain from Lyrica and Tramadol during the relevant period. (Tr. 416, 546).   She noted the history of hypertension and gastroesophageal reflux disorder were stable with medication.   (Tr. 414, 571, 851).

In this case, the ALJ has properly reviewed and discussed her reasons for the weight given to the opinions of Drs. Dubchak and Lentz. The ALJ has provided "good reason" to limit the weight given to the opinions, and thus we find that the ALJ's determination of the claimant's RFC is supported by substantial evidence.

### B. Miller's symptoms as a result of fibromyalgia and rheumatoid arthritis

Miller asserts that the ALJ failed to properly evaluate her symptoms as a result of her fibromyalgia and rheumatoid arthritis.

The Commissioner's regulations explain how an ALJ evaluates a claimant's testimony regarding how symptoms affect the ability to work:

> In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. § 404.1529(c)(4).

Standing alone, a claimant's allegation of a symptom is not enough to establish an impairment or disability.   20 C.F.R. § 404.1529(a);

*Prokopick v. Comm'r of Soc. Sec.*, 272 Fed. App'x 196, 199 (3d Cir. 2008) ("Under the regulations, an ALJ may not base a finding of disability solely on a claimant's statements about disabling pain. . . ."). An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so. *Prokopick*, 272 Fed. App'x at 199 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir.1999), and Soc. Sec. Ruling 96–7p, 1996 WL 374186).

The ALJ recognized Miller's impairments due to fibromyalgia, neck and back pain, joint swelling, chronic fatigue syndrome, depression, and anxiety. The ALJ pointed to Miller's allegations of lower extremity pain with walking, particularly in the morning, and her difficulty exercising due to pain in late 2013. Records showed that she only required conservative treatment, Humira injections, use of medications, chiropractic manipulation, and visits to the rheumatologist, and that improvement with respect to pain was documented with Lyrica and Tramadol during the relevant period. The ALJ noted a recommendation for Miller to lose weight in 2013 with records showing that she continued to gain weight against medical advice. (Tr. 395, 413, 417, 419, 551). The ALJ pointed to Miller's physical examinations, in which she typically

showed normal range of motion, sensation, and strength.  (Tr. 533, 536, 539, 543, 545, 547,549).  The records showed no longitudinal evidence of gross inability or markedly diminished range of motion, absent reflexes, loss of sensation, muscle atrophy or motor deficits during the relevant period.

Miller argues that the ALJ used her activities of daily living to discredit her.   However, it is well-established that the extent of a claimant's daily activities may be one factor in determining the credibility of the claimant's testimony.  *See* 20 C.F.R. § 404.1529(c)(4); *Turby v. Barnhart*, 54 Fed. App'x 118, 121 n.1 (3d Cir. 2002) ("Although certainly disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity, it is nonetheless appropriate for the ALJ to consider the number and type of activities, in which the claimant engages." (citations and internal quotation marks and brackets omitted)).

The ALJ pointed out that Miller's activities of daily living were just one additional factor and not the sole factor considered by the ALJ when determining whether Miller was disabled. The ALJ demonstrated her consideration of Miller's pain and subjective allegations repeatedly

within the decision. (Tr. 13-21).   More specifically, despite Miller's allegations of difficulty with standing and walking, the ALJ found that she was able to engage in daily activities during the relevant period.  (Tr. 17, 19).

As this Court has stated: "[I]t is permissible for such activities to be used to assess a claimant's [subjective allegations] in light of any true contradiction between his or her alleged severity of symptoms and the claimant's activities." *Durden v. Colvin*, 191 F. Supp. 3d 429, 442 (M.D. Pa. 2016).

### C. Remand directive of Appeals Council

Finally, Miller argues that the ALJ failed to follow the remand directive of the Appeals Council.  Under 42 U.S.C. § 405(g), this court's jurisdiction extends only to the commissioner of Social Security's final decision, which in this case is the ALJ's second decision, not the Appeal's Council remand.

As this court, has previously held, we lack the authority to consider whether an ALJ complied with a remand order.  *Kissell v. Berryhill*, No. 3:17-cv-02203, 2018 WL 4207746 *5 (M.D. Pa. Sept. 4, 2018) (citing *Ford v. Colvin*, 2015 WL 4608136 (D. Del. July 31, 2015); *Pearson v. Colvin*,

2015 WL 9581749 (D.N.J. Dec. 30, 2015); *Scott v. Astrue*, 2007 WL 1725252 (E.D. Pa. June 12, 2007)).   Therefore, we are constrained to reject plaintiff's assignment of error that the ALJ failed to follow the record directive of the Appeals Council.

The Court finds that the ALJ properly evaluated Miller's subjective allegations, the record evidence, the medical opinions of record, and considered all of Miller's symptoms.   In light of all of the information stated above regarding the ALJ's analysis and explanations, we find that there is substantial evidence to support the ALJ's determinations.

An appropriate Order follows.


*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
**United States Magistrate**

**Dated: November 20, 2020**